UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LOBO CAPITAL PARTNERS, LLC,

Plaintiff,

vs.

BRIAN FORTE, an individual;
SUCCESS RESOURCES USA, LLC,
a Florida limited liability company; and
TAKE ACTION MEDIA, INC., a Florida
corporation,

Defendants.

Case No.:_____
INJUNCTIVE RELIEF REQUESTED

## COMPLAINT

Plaintiff Lobo Capital Partners, LLC ("Lobo"), through its undersigned counsel, files this Complaint against Defendants, Brian Forte ("Forte"), Success Resources USA, LLC ("SRU"), and Take Action Media, Inc. ("TAM") (collectively the "Defendants").

## INTRODUCTION

1. This action involves the Defendants' systematic and continued theft of Lobo's assets, to wit, the assets of Life Win, Inc. ("Life Win"), Booker T. Equity, LLC ("Booker"), Get Motivated Seminars, Inc. ("GMS") and Wealth Magazine Investor Education, LLC ("WMIE") (collectively, the "Companies"), including but not limited unauthorized use of the Companies' trade secrets and confidential information and knowing infringement and dilution of the Companies' trademarks and trade dress.

2. Lobo also seeks injunctive relief, among other things, an order from this Court requiring the Defendants to perform an equitable accounting of all profits or other

benefits realized by the Defendants, or by any persons or entities acting in concert or participation with them, as a result of their improper actions and impose a constructive trust in favor of Lobo over all such profits or benefits;

## PARTIES

3. Lobo is a Florida limited liability company and is the owner of the assets of the Companies.

4. Mr. Forte is an individual who resides in Hillsborough County, Florida.

5. TAM is a Florida corporation with its principal place of business located in Palm Beach County or Hillsborough County, Florida. Upon information and belief, Mr. Forte is an owner, officer, and/or director of TAM, or otherwise are associated or affiliated with TAM.

6. SRU is a Delaware limited liability with its principal place of business in Hillsborough County, Florida. Upon information and belief, Forte is a managing member of SRU, or is otherwise associated or affiliated with SRU.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 as the action involves federal questions under the Lanham Act. This Court has jurisdiction over the non-federal-question claims under 28 U.S.C. § 1367.

8. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

9. The Companies are engaged in the business of providing motivational and educational seminars and services, including associated administrative, financial, marketing, consulting, and management services under the trade name "Get Motivated".

10. The seminars are usually held in large arenas and feature celebrity speakers, such as sports stars, entertainers, and politicians.

11. The Companies advertise the seminars through various channels including, newspaper, radio, television, internet and web-based advertising.

12. The Companies' proprietary and confidential business information and trade secrets, include, without limitation, customer and vendor information, contact lists, business methodologies and processes, marketing, promotional and training materials, technical information, computer software and databases, financial metrics, and information concerning the Companies' financing and expansion (collectively, the "Trade Secrets and Other Confidential Information").

13. The Companies have operated under the name "Get Motivated" (the "Name") and GMS has various trademarks (the "Marks"), including but not limited to the following:

    a.    GET MOTIVATED! BUSINESS SEMINAR (Ser. No. 85394152)

    b.    STAY MOTIVATED (Reg. No. 4048886)

    c.    GET MOTIVATED (Reg. No. 3286477)

    d.    GET MOTIVATED (Reg. No. 3535473)

    e.    GET MOTIVATED (Reg. No. 3267850)

14. The Get Motivated website, www.getmotivated.com (the "Domain Site") and the Get Motivated print advertisements have had the same appearance, layout, design and overall look and feel since 2007.

15. In addition, the Companies have used distinctive and non-functional design elements in the Domain Site and in print advertisement as a unique source indicator for the Companies and their goods and services, and, as a result, have developed trade dress rights in the Domain Site and print advertisements (the "Trade Dress").

16. Forte held an executive position with the Companies. As a result of his positions, Forte had access to the Trade Secrets and Other Confidential Information.

17. On or about January 14, 2002, Forte entered into a "Confidentiality, Nondisclosure and Noncompete Agreement" with the Companies (the "Agreement"). A copy of the Agreement is attached hereto as Exhibit "A" and made a part hereof.

18. Pursuant to the Agreement, Forte agreed and acknowledged, among other things, that he would be made privy to confidential and proprietary information, and therefore would not disseminate the information to third parties during his employment with the Companies, or for a period of five years thereafter.

19. Forte also agreed that, during his employment or association with the Companies and for a period of two years thereafter, he would not (a) solicit the Companies' employees, or otherwise interfere with the relationship between the Companies and their employees; (b) interfere with the relationships between the Companies and their customers, or any other business relationships; or (c) engage in certain competitive activities.

20. In December of 2011, Forte's association with the Companies was terminated.

21. Upon information and belief, in early 2012, Forte became associated with TAM, and took control of much of the Companies' property, including but not limited the Companies' trademarks, trade names, trade dress, domain name and domain site, www.getmotivated.com, accounting data and software, telephone numbers and other assets.

22. Upon information and belief, Defendants began conducting business under the name "Get Motivated" (the "Name") and various GMS trademarks (the "Marks") and began advertising and purporting to offer "Get Motivated" business seminars as their own.

23. Upon information and belief, the Defendants are utilizing the Companies' property and Trade Secrets and Other Confidential Information in connection with TAM's business and have disclosed the Trade Secrets and Other Confidential Information to third parties.

24. On May 2, 2012,[1] to secure payment and performance under a $12,000,000 promissory note, Life Win and Booker entered into security agreements granting Amy R. Wolfe ("Wolfe") a security interest in the collateral of Life Win and Booker ("Security Agreements"). Paragraph 1 of the Security Agreements state in part,

---

[1] The original promissory notes for a total of $12,000,000 were originally issued on October 13, 2011. Life Win executed a security agreement at that time as well to secure payment and performance of the original promissory notes. On May 2, 2012 the two promissory notes were combined into one note with Life Win reaffirming its 2011 security agreement with the 2012 security agreement and with Booker entering into a security agreement for its assets.

> *[Life Win/Booker] grants to [Wolfe]a security interest ("Security Interest") in all general intangibles including but not limited to, **intellectual property and goodwill**, accounts receivable, goods, instruments, documents, inventories, equipment and fixtures (as such terms are defined in the Uniform Commercial Code in effect in Utah from time to time (the "Uniform Commercial Code")) of [Life Win/Booker], whether now owned or hereafter acquired for use in [Life Win/Booker]'s business, and all substitutions thereof, accessions thereto and proceeds thereof, including any personal property or fixtures purchased with cash proceeds (collectively, the "Collateral").*

25. Simultaneously with the execution of the May 2, 2012 Security Agreements, Life Win and Booker executed Utah Confessions of Judgment in favor of Wolfe ("Utah Judgments").

26. On June 8, 2012, Wolfe perfected her security interest in the Security Agreements by filing Uniform Commercial Code Financing Statements in Florida, Utah, and Nevada. A copy of the Security Agreements and the financing statements are attached hereto as Composite Exhibit "B" and made a part hereof.

27. Upon information and belief, on June 15, 2012, Forte formed Success Resources USA, LLC, a Delaware limited liability company. On June 29, 2012, SRU was authorized to do business in Florida as a professional development, training and seminar company. According to the Florida Secretary of State records, Forte is the managing member of SRU. A copy of the Florida Secretary of State web listing for SRU is attached hereto as Exhibit "C" and made a part hereof.

28. On August 3, 2012, Wolfe foreclosed her interest on the Companies assets by recording the Utah Judgments in the Third Judicial District Court for Utah County, State of Utah, captioned *Wolfe v. Life Win, Inc.*, Civil No. 120905259 and *Wolfe v. Booker T. Equity, LLC*, Civil No. 120905258. Ten (10) days later, on August 13, 2012,

Wolfe initiated actions in Hillsborough County, Florida against Life Win and Booker to domesticate the Utah Judgments, to wit, *Wolfe v. Life Win, Inc.*, Case No. 2012-CA-012968 and *Wolfe v. Booker T. Equity, LLC*, Case No. 2012-CA-012962. A copy of the Utah Judgments and Notices to Life Win and Booker as judgment debtors are attached hereto as Composite Exhibit "D" and made a part hereof.

29. On August 6, 2012 Wolfe assigned all of her right, title and interest in the Security Agreements and Utah Judgments to Lobo. A copy of the assignment is attached hereto as Exhibit "E" and made a part hereof.

30. The Companies had scheduled Get Motivated seminars for Denver, Colorado for September 28-29, 2012 and in Orlando, Florida for November 2-3, 2012. However, due to the issues caused by Defendants, the Companies were forced to cancel these seminars.

31. On or about August 19, 2012, Lobo became aware that SRU was advertising a two day motivational and educational seminar at the Orlando Convention Center featuring celebrity speakers, such as sports stars, entertainers, and politicians ("SRU Advertisements"). The SRU Advertisements are appearing in the Orlando Sentinel, on local billboards, and over the radio. A copy of the August 19th, 20th and 22nd Orlando Sentinel full page advertisements are attached hereto as Composite Exhibit "F" and made a part hereof.

32. The SRU Advertisements and website copies the appearance, layout, design, and overall look and feel of the GMS advertisements and the Domain Site. SRU is also using the same celebrity speakers that Get Motivated has used for several years.

In fact, SRU is using pictures from Get Motivated seminars in the SRU Advertisements and on its website.

33. The Defendants have scheduling SRU seminars in the same cities and on the same dates that Get Motivated had previously scheduled seminars, to wit, Denver on September 28-29, 2012 and Orlando on November 2-3, 2012. These upcoming seminars are listed on the SRU website, www.success2012seminar.com. A copy of the SRU seminar schedule web page is attached hereto as Exhibit "G" and made a part hereof.

34. The Trade Dress has no utilitarian function of any kind and was adopted to give the seminars a distinctive appearance and to indicate source of origin.

35. The Trade Dress of the seminars is fanciful, inherently distinctive, well recognized, and represents the source of origin of Get Motivated's seminars and the substantial good will of Get Motivated throughout the United States, including the State of Florida.

36. The Companies have invested large sums of money in marketing, advertising, and promoting its various seminars. Its seminars have been advertised nationwide in print and on the internet for over a decade.

37. As a result of its substantial sales and extensive advertising and promotional activities of the Companies, the distinctive Trade Dress of its various advertising and business processes have achieved commercial distinction and recognized as indicating the source of origin of Get Motivated. As a result, the Trade Dress has acquired secondary meaning.

38. The Defendants, without the approval, authorization, or consent of Lobo or the Companies, and with the assistance of others, improperly and intentionally mimicked the Get Motivated advertising and business processes.

39. The Defendants knowingly and improperly copied Get Motivated's distinctive trade dress, and embarked upon a malicious and intentional scheme and plan to unfairly trade upon and misappropriate the success of the Get Motivated seminars. That scheme and plan includes the marketing, advertising, and offering for sale and/or sale of confusingly similar seminars.

40. The Defendants seminars are competitive products and services and are sold in the same channels of trade to the Companies' customers.

41. The Defendants' acts constitute unfair competition, trade dress infringement, false designation of origin, and dilution of famous marks in violation of 15 U.S.C. § 1125(a) & (c), and Florida statutory and common law.

## COUNT I
## BREACH OF CONTRACT
### (Forte)

42. Lobo hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1-41 above as if fully set forth herein.

43. The Companies and Forte previously entered into the Agreement.

44. By entering into the Agreement, the Companies sought to, and did, protect their legitimate business interests, including, but not limited to, protection of (a) the Trade Secrets and Other Confidential Information; (b) substantial relationships with the Companies' employees, and with the Companies' prospective or existing customers; and (c) the Companies' goodwill.

45. The Companies fully performed all of their obligations under the Agreement.

46. Lobo is the owner of the assets of the Companies, including but not limited to, Trade Secrets and Other Confidential Information and the Companies' goodwill.

47. The restrictive covenants in the Agreement are reasonable in scope, and are reasonably necessary to protect legitimate business interests.

48. Forte materially breached the Agreement by, without limitation:

(a) Becoming employed or associated with TAM and SRU, or engaging in other Competitive Activities;

(b) Improperly and without authorization removing Trade Secrets and Other Confidential Information from the Companies' Office;

(c) Failing to return Trade Secrets and Other Confidential Information upon the termination of his employment with the Companies; and

(d) Disclosing Trade Secrets and Other Confidential Information to third parties, including, without limitation, TAM and SRU;

(e) Soliciting the Companies' employees, or otherwise interfering with the relationships between the Companies and their employees; and

(f) Intentionally and unjustifiably interfering with the business or contractual relationships by and between the Companies and by and between the Companies and third parties.

49. As a direct and proximate result of Forte's material breach of the Agreement, Lobo and the Companies have suffered, and will continue to suffer, damages.

50. Further, given Forte's actions in breach of the Agreement, Lobo and the Companies have suffered, and if Forte is not enjoined, will continue to suffer, irreparable harm and injury for which Lobo and the Companies have no adequate remedy at law.

51. Lobo has a clear legal right to an injunction prohibiting Forte's improper actions, and likely will succeed on the merits in this action.

52. The injunction requested herein will not disserve the public interest, and will not prejudice, or result in undue hardship on Forte.

53. Lobo has retained the undersigned counsel to prosecute the claims asserted herein, and are obligated to pay the undersigned a reasonable fee for their services. Forte is obligated to pay the Companies reasonable attorneys' fees pursuant to Section 9(j) of the Agreement and *Florida Statutes* § 542.335(1)(k) (to the extent applicable).

WHEREFORE, Lobo respectfully requests that the Court enter its judgment:

(a) Temporarily, and upon final hearing permanently, enjoining Forte, and all persons or entities acting in concert or participation with him, from:

(i) disclosing the Trade Secrets and Other Confidential Information, or utilizing such information in a manner not permitted by the Agreement;

(ii) directly or indirectly soliciting, diverting or endeavoring to entice customers away from the Companies or any Affiliate thereof, or otherwise engaging in any activity intended to terminate, disrupt or interfere with the

relationships between the Companies and their Affiliates and their respective Customers or other business relationships; and

   (iii) engaging in any Competitive Activities, including, without limitation, (1) serving as director of any Competitor; (2) directly or indirectly controlling any Competitor, or owning any equity or debt interest in any Competitor; (3) becoming employed by, serving as an officer or partner of, or providing consulting or independent contractor services to any Competitor; or (4) participating in the ownership, management, operation or control of, or being connected in any manner with, any Competitor.

 (b) Directing Forte, and all persons or entities acting in concert or participation with him, to comply fully with the Agreement;

 (c) Ordering an equitable accounting of all profits or other benefits realized by the Defendants, or by any persons or entities acting in concert or participation with them, as a result of their improper actions, and imposing a constructive trust in favor of Lobo over all such profits or benefits;

 (d) Awarding Lobo compensatory damages and all other relief, statutory or otherwise, to which they are entitled, together with pre and post-judgment interest as allowed by applicable law;

 (e) Awarding Lobo its costs and reasonable attorneys' fees;

 (f) Awarding Lobo punitive damages; and

 (g) Granting such other and further relief that the Court deems proper.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS

54. Lobo hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1-41 above as if fully set forth herein.

55. The Defendants have in their possession the Trade Secrets and Other Confidential Information.

56. The Trade Secrets and Other Confidential Information consist of, among other things, trade secrets within the meaning of *Florida Statutes* § 688.002(4).

57. The Defendants removed the Trade Secrets and Other Confidential Information from the Companies' Office without authorization, and are using the same in connection with TAM and SRU, or for other improper purposes.

58. The Defendants' actions in that regard constitute misappropriation of trade secrets within the meaning of *Florida Statutes* § 688.002(2).

59. As a direct and proximate result of the Defendants' misappropriation of the Companies' trade secrets, Lobo has suffered, and will continue to suffer, damages.

60. Further, given the Defendants' improper actions, Lobo has suffered, and if the Defendants are not enjoined, will continue to suffer, irreparable harm and injury for which Lobo has no adequate remedy at law.

61. Lobo has a clear legal right to an injunction prohibiting the Defendants' misappropriation, and likely will succeed on the merits in this action.

62. The injunction requested herein will not disserve the public interest, and will not prejudice, or result in undue hardship on, the Defendants.

63. Lobo has retained the undersigned counsel to prosecute the claims asserted herein, and is obligated to pay the undersigned a reasonable fee for their services. The Defendants are obligated to pay Lobo's reasonable attorneys' fees pursuant to *Florida Statutes* § 688.005.

WHEREFORE, Lobo respectfully requests that the Court enter its judgment:

(a) Temporarily, and upon final hearing permanently, enjoining the Defendants, and all persons or entities acting in concert or participation with them, from:

    (i) disclosing the Trade Secrets and Other Confidential Information, or utilizing such information in a manner not permitted by the Agreement;

    (ii) directly or indirectly employing or soliciting for employment, or becoming involved with the employment of, any employee of the Companies or any Affiliate thereof; and

    (iii) directly or indirectly soliciting, diverting or endeavoring to entice Customers away from the Companies or any Affiliate thereof, or otherwise engaging in any activity intended to terminate, disrupt or interfere with the relationships between the Companies and their Affiliates and their respective Customers or other business relationships.

(b) Directing the Defendants, and all persons or entities acting in concert or participation with them, to immediately return to Lobo and the Companies – in the manner directed by the Lobo's counsel – all Trade Secrets and Other Confidential Information (together with any and all copies, compilations, or extracts of such information).

(c)     Ordering an equitable accounting of all profits or other benefits realized by the Defendants, or by any persons or entities acting in concert or participation with them, as a result of their improper actions, and imposing a constructive trust in favor of Lobo over all such profits or benefits;

(d)     Awarding Lobo compensatory damages and all other relief permitted by applicable law, including without limitation, *Florida Statutes* § 688.004, and interest on such damages as allowed by applicable law;

(h)     Awarding Lobo its costs and reasonable attorneys' fees;

(i)     Awarding Lobo punitive damages; and

(j)     Granting such other and further relief that the Court deems proper.

## COUNT III
## UNFAIR COMPETITION, INFRINGEMENT AND DILUTION

64.     Lobo hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1-41 above as if fully set forth herein.

65.     This cause of action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66.     Defendants are promoting a seminar entitled "Success 2012 Seminar" using the appearance, layout, design, same photographs, and overall look and feel of the GMS advertisements and the Domain Site.

67.     Upon information and belief, Defendants are using the identical business methodologies and processes, marketing, promotional and training materials to that of the Get Motivated seminars.

68. By the aforesaid acts, Defendants have falsely designated the origin, quality and nature of their business and have falsely described and represented same, causing likelihood of confusion and constituting unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C § 1125(a).

69. Defendants' actions are likely to cause confusion or mistake among the public as to the true origin and sponsorship of Defendants' seminars, and is likely to cause confusion and mistake in the minds of the public, or has deceived or was likely to deceive the public, as to the affiliation, connection, or association of Defendants with the Companies' sponsorship or approval of the Defendants' goods and services.

70. The Defendants' acts of unfair competition, false designation of origin, and dilution were willful and were committed in bad faith with knowledge and intent to cause confusion, mistake, and deception.

71. As a direct and proximate result of the Defendants' wrongful acts, the Lobo and the Companies have suffered and will continue to suffer damage to their business reputation and goodwill.

72. The aforesaid acts by Defendants have been undertaken with knowledge of Lobo's and the Companies exclusive rights to the Marks and Trade Dress, and are willful, entitling Lobo to an award of treble damages and attorneys' fees in bringing and maintaining this action, pursuant to Section 35(b) of the Trademark Act, IS U.S.C. § 1117(b).

WHEREFORE, Lobo respectfully requests that this Court enter its judgment:

(a) Ordering an equitable accounting of all profits or other benefits realized by the Defendants, or by any persons or entities acting in concert or participation with them, as a result of their improper actions, and imposing a constructive trust in favor of Lobo over all such profits or benefits;

(b) Awarding Lobo compensatory damages and all other relief, statutory or otherwise, to which they are entitled, together with pre and post-judgment interest as allowed by applicable law;

(c) Awarding Lobo three times the amount of compensatory damages and profits pursuant to 15 U.S.C. § 1117;

(d) Awarding Lobo its costs and reasonable attorneys' fees;

(e) Awarding Lobo punitive damages; and

(f) Granting such other and further relief that the Court deems proper.

## COUNT IV
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

73. Lobo hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1-41 above as if fully set forth herein.

74. The Defendants' actions discussed above constitute deceptive trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*

75. As a direct and proximate result of the Defendants' violations of the FDUTPA, Lobo has suffered and continues to suffer damage.

WHEREFORE, Lobo respectfully requests that the Court enter its judgment:

(a) Ordering an equitable accounting of all profits or other benefits realized by the Defendants, or by any persons or entities acting in concert or participation with them, as a result of their improper actions (as described above), and imposing a constructive trust in favor of Lobo over all such profits or benefits;

(b) Awarding Lobo compensatory damages and all other relief, statutory or otherwise, to which they are entitled, together with pre and post-judgment interest as allowed by applicable law;

(c) Awarding Lobo its costs and reasonable attorneys' fees;

(d) Awarding Lobo punitive damages; and

(e) Granting such other and further relief that the Court deems proper.

## COUNT V
## CIVIL CONSPIRACY

76. Lobo hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1-41 above as if fully set forth herein.

77. An agreement existed between the Defendants to commit the unlawful acts described above.

78. The Defendants took overt acts in furtherance of the agreement/conspiracy to commit the unlawful acts.

79. As a direct and proximate result of the Defendants' agreement/conspiracy to commit the unlawful acts, Lobo has suffered and will continue to suffer damage.

WHEREFORE, Lobo respectfully requests that the Court enter its judgment:

(a) Awarding Lobo compensatory damages, together with pre and post-judgment interest as allowed by law;

    (b)    Awarding Lobo the costs of this action;

    (c)    Awarding Lobo punitive damages; and

    (d)    Granting such other and further relief as the Court deems proper.

PINONICHOLSON, PLLC
189 South Orange Avenue, Suite 1650
Orlando, FL 32801
Telephone: 407-425-7831

_____
LAURENCE J. PINO, ESQ.
Florida Bar No: 233749
Email: ljp@pinonicholsonlaw.com

_____
MYRA P. NICHOLSON, ESQ.
Florida Bar No: 710024
Email: myra@pinonicholsonlaw.com